UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **JOHNATHAN DALE JONES** | * | **CIVIL ACTION NO. 16-1462** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS, JR.** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>REPORT AND RECOMMENDATION</u>

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Johnathan Dale Jones protectively filed the instant application for Title II Disability Insurance Benefits on October 8, 2013. (Tr. 9, 88-92). He alleged disability as of April 10, 2012, because of multiple sclerosis, left wrist injury, brain lesions, depression, and high blood pressure. (Tr. 114, 122). The state agency denied the claim at the initial stage of the administrative process. (Tr. 45-61). Thereafter, Jones requested and received a December 10, 2014, hearing before an Administrative Law Judge ("ALJ"). (Tr. 23-44). However, in an April 24, 2015, written decision, the ALJ determined that Jones was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that he was able to return to past relevant work, or alternatively at step five, that he could make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 6-19). Jones appealed the adverse decision to the Appeals Council. On August 19, 2016, however, the Appeals Council denied

Jones's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On October 20, 2016, Jones filed the instant complaint for judicial review of the Commissioner's decision. He contends that, for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Jones did not engage in substantial gainful activity during the relevant period. (Tr. 11).[1] At step two, she found that he suffered severe impairments of multiple sclerosis; history of left wrist injury, status post surgery; hypertension; and obesity. *Id*.[2] She concluded, however, that the claimant's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 13).

### II. Residual Functional Capacity

The ALJ next determined that Jones retained the residual functional capacity ("RFC") to perform light work,[3] but could only frequently handle with the left upper extremity, frequently

---

[1] She did note, however, that wage reports showed substantial gainful activity earnings from January through September 2013. (Tr. 11).

[2] The ALJ determined that the claimant's medically determinable impairment of depression was non-severe. (Tr. 11-13).

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

climb stairs and ramps, and occasionally climb ladders and scaffolds. (Tr. 13-17).

### III. Steps Four and Five

At step four, the ALJ employed a vocational expert ("VE") to find that Jones was able to perform his past relevant work as a sales representative and parts person, both as these jobs were actually and generally performed. (Tr. 17-18).[4]

The ALJ also proceeded to make an alternative step five finding. At this step, the ALJ determined that the claimant was a "younger" individual, with a limited education, and the ability to communicate in English. (Tr. 17-18). Transferability of skills was not material to the decision. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.18, Table 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 17-18). However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE

---

> weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

identified the representative job of price marker, *Dictionary of Occupational Titles* ("DOT") Code # 209.587-034, and cashier II, DOT Code # 21.462-010, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 17-18, 42-43).[5]

## Analysis

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, and the impressions of the consultative and non-examining agency physicians. In deriving plaintiff's RFC, it is manifest that the ALJ grounded her findings on the opinions of the consultative and agency physicians. Indeed, she assigned those opinions "great weight." (Tr. 17). The opinions of these physicians may be summarized as follows:

At the request of the state agency, Jones underwent a consultative physical examination on January 14, 2014, administered by Lyubov Olenina, M.D. (Tr. 224-228). Jones's chief complaints were multiple sclerosis, left wrist injury, brain lesions, depression, and high blood pressure. *Id*. Jones reported that he received the multiple sclerosis diagnosis two years earlier. *Id*. Since that time, he had experienced one episode of blurry vision over the summer of 2013, which resolved itself without any treatment. *Id*. He denied any weakness, numbness, or incontinence. *Id*. He had experienced left wrist pain since 2010 when he hurt his wrist at work. *Id*. He underwent wrist surgery approximately one and one-half years later, but still had some problems with his left grip and left hand weakness. *Id*. He also stated that he was fatigued and depressed. *Id*. Jones stated that he did well with his activities of daily living, and was "OK" in social situations. *Id*. He drank alcohol several times per week. *Id*. He also founded a golf-cart

---

[5] The VE testified that for the price marker job, there existed 318,712 positions nationally. For the cashier II job, there existed 810,064 positions nationwide. (Tr. 18, 42-43).

company, but lately a friend had taken it over because he no longer could do it. *Id*.

Upon examination, Jones's distal left forearm had mild muscle atrophy. *Id*. Pronation of the left elbow caused pain in the left forearm. *Id*. He also had decreased range of motion of the left wrist. *Id*. His gait/station were normal. *Id*. He was able to bend and squat 3/4 of the way. *Id*. His grip strength was 5/5, with adequate fine motor movement, dexterity, and ability to grasp objects bilaterally. *Id*. He did not appear to be depressed or anxious. *Id*. His recent and remote memory remained intact. *Id*. He had good insight and cognitive function. *Id*.

Dr. Olenina diagnosed multiple sclerosis that was asymptomatic, and stable; history of left wrist injury marked by pain on pronation, mild muscle atrophy; hypertension that was uncontrolled, non-compliant with therapy, but asymptomatic; and mild depression. *Id*. She opined that, based on the examination and the objective evidence, Jones should be able to sit, walk, and/or stand for a full workday. *Id*. He also had mild limitations in his ability to lift/carry objects because of the condition of his left upper extremity. *Id*.

On January 24, 2014, non-examining agency physician Anthony Scardino, M.D., reviewed the record evidence, including Dr. Olenina's findings, and completed a physical residual functional capacity assessment form. (Tr. 53-55). He opined, in effect, that Jones retained the exertional capacity for light work, limited by the ability to only frequently climb ramps/stairs, only occasionally climb ladders/ropes/scaffolds, and with limited gross manipulation of the left wrist because of decreased range of motion. *Id*.[6]

Plaintiff suggests that the records of plaintiff's treating physicians support more restrictive limitations of functioning than what the ALJ found. The court is not so persuaded.

---

[6] Non-examining agency psychologist Julia Wood, Ph.D. completed a psychiatric review technique and concluded that plaintiff's mental impairments were non-severe. (Tr. 51-52).

The treatment records are summarized, in pertinent part, as follows:

On March 30, 2012, Jones was seen by Bruce Brouillette, M.D. (Tr. 180). At that time, his chief complaint was sporadic nausea and dizziness. *Id*. He complained of minimal sleep and constant depression. *Id*. Upon examination, he had good range of motion in all extremities, with good motor/sensory function. *Id*. Brouillette diagnosed, *inter alia*, multiple sclerosis, vertigo, fatigue, insomnia, and depression. *Id*.

On May 15, 2012, plaintiff was seen by orthopedist, Michael Acurio, M.D., for left wrist pain. (Tr. 217-218). He reported increasing discomfort when active. *Id*. Acurio gave him an injection. *Id*.

On June 5, 2012, plaintiff returned to Dr. Acurio for left wrist pain. (Tr. 215-216). Jones reported some pain in his left wrist. *Id*. Acurio diagnosed status-post TFCC tear, with continued pain. *Id*.

On September 12, 2012, plaintiff again saw Dr. Acurio for left wrist pain. (Tr. 213-214). He was not yet working, but when active, he experienced pain. *Id*.

On January 15, 2013, returned to Dr. Acurio for increasing pain to his left wrist. (Tr. 211-212).

On April 16, 2013, plaintiff was seen at University Health-Shreveport by Allreza Minagar, M.D. (Tr. 198-199). His chief complaint was multiple sclerosis. *Id*. His mood and affect were normal. *Id*. His memory was intact. *Id*. Motor examination showed normal tone and strength in all extremities. *Id*. Gait and stance were normal. *Id*. He was able to walk independently, and was not at risk for falls. *Id*.

On April 17, 2013, Jones returned to Dr. Acurio. (Tr. 209-210). He reported some increase in pain when active. *Id*. Examination of the left wrist showed good range of motion.

*Id*. However, he was tender to palpation to the distal radial ulnar joint. *Id*.

On July 17, 2013, Jones went back to Dr. Acurio. (Tr. 207-208). Examination of the left wrist showed tenderness to palpation on Watson's maneuver. *Id*.

Jones returned to Dr. Minagar on July 29, 2013. (Tr. 199-201). He remained stable on Copaxone. *Id*. He denied new onset double vision, visual loss, falls, weakness, or incontinence. *Id*. His mood and affect were normal. *Id*. He had normal tone and strength in all four extremities. *Id*. He was able to walk independently and was not at risk for falls. *Id*.

On October 23, 2013, Jones returned to Dr. Acurio. (Tr. 205-206, 263-264). He reported that he still had pain in his wrist, especially if he was very active. *Id*. He occasionally took pain medication. *Id*. Acurio diagnosed TFCC tear of the left wrist. *Id*. He placed him on Celebrex and Lortab, and instructed to follow up in three months. *Id*.

Jones saw Dr. Acurio again on February 18, 2014. (Tr. 261-262). He reported increasing pain in his left wrist. *Id*. He stated that the more repetitive the motion, the worse the pain became. *Id*. Acurio stated that Jones could *continue* working. *Id*.

On March 19, 2014, plaintiff was seen by neurologist Sanjeevi Tivakaran, M.D. (Tr. 249-251). Jones reported that his symptoms started about four years earlier. *Id*. He described the symptoms as moderate. *Id*. He stated that the symptoms were fairly well controlled. *Id*. Jones continued on Copaxone and tolerated it without any significant side effects. *Id*. He had slightly blurred vision two weeks earlier that had resolved. *Id*. Towards the end of 2012, he had moderate to severe pain in the right elbow, then it moved to his left elbow and resolved after six months. *Id*. He reported some pain in the bottom of his feet that resolved when he stretched his feet. *Id*. He had some tingling and numbness bilaterally in his hands and feet for several years that had not changed. *Id*. His balance was slightly off because of multiple sclerosis, but it had

not worsened. *Id*.

On May 28, 2014, plaintiff returned to Dr. Acurio. (Tr. 259-260). Jones still was experiencing pain to his left wrist. (Tr. 259-260). Acurio stated that he could continue working. *Id*. Dr. Acurio saw plaintiff again on August 27, 2014, for his complaints of left wrist pain. (Tr. 257). Jones reported that he was doing about the same with continued pain in his wrist. *Id*. Nonetheless, Acurio stated that Jones could *continue* working. *Id*.

On September 18, 2014, Jones returned to Dr. Tivakaran. (Tr. 243-246). He reported moderate symptoms of multiple sclerosis. *Id*. Jones stated that the symptoms were fairly well controlled. *Id*. He was not having as much pain in his tail bone, feet, and ankles for the past couple of months. *Id*. He felt that he was much more active now. *Id*. However, he reported that he was easily fatigued during the day. *Id*. He felt that his balance was slightly worse. *Id*. Tivakaran diagnosed multiple sclerosis, but at present, there were no symptoms of exacerbation. *Id*. He also diagnosed joint pain. *Id*. Nonetheless, Jones reported that his joint pain was better, and continued to improve. *Id*.

Plaintiff alleges that the ALJ failed to comply with Social Security Ruling 96-8p, which specifies, *inter alia*, that the RFC must be a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, SSR 96-8P (July 2, 1996). Here, however, the ALJ based her decision, in no small part, upon the medical reports of the consultative and agency physicians, which contained a general evaluation of plaintiff's impairments, and a function-by-function analysis of the functional limitations imposed by those impairments. These medical reports, when combined with the ALJ's appraisal of the testimony and the remainder of the record satisfies the requirements of SSR 96-8p, and its associated

regulations. *Beck v. Barnhart*, 205 Fed. Appx. 207, 214 (5th Cir.2006) (citation omitted); *Onishea v. Barnhart*, 116 Fed. Appx. 1, 2 (5th Cir.2004)

Plaintiff further contends that the ALJ failed to comply with Social Security Ruling 96-7p by failing to set forth specific findings as to credibility. The court observes that when assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7P (S.S.A July 2, 1996).[7] The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Relatedly, the court recognizes that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27

---

[7] The Commissioner issued a new ruling that superseded and rescinded SSR 96-7p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029. The purpose of the new ruling is to eliminate the use of the term "credibility" in the agency's sub-regulatory policy because the regulations do not use the term. However, SSRs are not effective until publication. https://www.ssa.gov/OP_Home/rulings/rulings-pref.html (last visited Feb. 12, 2018). Accordingly, the court will consider the ruling that was in effect at the time of the ALJ's final decision.

F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§404.1529(c)(3)(i)-(vii).

The ALJ complied with the foregoing requirements in this case. She dutifully recorded the hearing testimony provided by plaintiff and his mother. (Tr. 15). Moreover, she found that the hearing testimony was consistent with the initial allegations. *Id*. Ultimately, however, she determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for reasons set forth in the decision. *Id*.

For example, she noted that although plaintiff complained of medication side effects at the hearing, there was no indication of functionally limiting side effects in the records of the treating physicians. (Tr. 16).[8] As to plaintiff's continued complaints of left wrist pain, the ALJ credited the findings of the consultative examiner who found but mild symptoms, which provided support for the ALJ's finding that plaintiff could frequently (but not constantly) handle with his left upper extremity. *Id*. In fact, plaintiff's treating orthopedist stated on several occasions that plaintiff could continue working. (Tr. 257-262). The ALJ also relied on plaintiff's own representation that he was able to lift 20 pounds without pain. (Tr. 16, 144).

---

[8] At the hearing, plaintiff alleged that his medication only gave him a rash and an upset stomach. (Tr. 34).

In her credibility assessment, the ALJ noted that, for at least part of the relevant period at issue, Jones continued to work 30 hours per week, which indicated that his functioning was not as limiting as alleged. (Tr. 16). In addition, he testified that he received unemployment benefits from April to December 2012, which means that, in accordance with state law, he held himself out as available and able to work during that period. (Tr. 16). Clearly, his receipt of unemployment benefits was inconsistent with his representations before the Commissioner. *Id*.

In sum, the court finds that the ALJ's credibility determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence. *See Giles v. Astrue*, 433 Fed. Appx. 241, 249 (5th Cir.2011) (ALJ satisfied the requirements for supporting his credibility finding by discussing the medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 905–06 (5th Cir.2010) (ALJ complied with SSR 96-7p by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

The undersigned further finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

Finally, plaintiff argues that the ALJ erred by failing to credit her second hypothetical to the vocational expert, which included additional limitation(s) of functioning that she ultimately did not adopt in her RFC. However, a hypothetical need only reasonably incorporate the

disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's initial hypothetical substantially incorporated the limitations recognized in her RFC, and that assessment is supported by substantial evidence. *See* discussion, *supra*.[9]

## Conclusion

The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence by no means was uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[10]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial

---

[9] Plaintiff further argues that the vocational expert mischaracterized one of his prior jobs that entailed climbing oil derricks to install cameras as a video sales representative. However, even if this job were excluded from the ALJ's analysis, there still is substantial evidence to support the ALJ's determination that plaintiff could perform his past relevant work as a parts person, or alternatively, make an adjustment to other work that exists in substantial numbers in the national economy. Thus, any error was harmless.

[10] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 13th day of February 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE